**IN RE: OJI AFIBA WASHINGTON, Debtor**

**State of Indiana on the Relation of the Indiana Department of Workforce Development, Plaintiff**

**v.**

**Oji Afiba Washington, Defendant**

**CASE NO. 15–10476**
**PROC. NO. 15–1064**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Signed February 5, 2016

Heather M. Crockett, Maricel Elaine Villacampa Skiles, Office of the Indiana Attorney General, Indianapolis, IN, for Plaintiff.

Grant F. Shipley, Shipley & Scott, 233 West Baker Street, Fort Wayne, IN, for Defendant.

## DECISION AND ORDER DENYING MOTION FOR DEFAULT JUDGMENT

Robert E. Grant, Chief Judge, United States Bankruptcy Court

By this adversary proceeding the plaintiff claims the debtor falsely represented his eligibility for unemployment insurance benefits. As a result, it seeks to recover everything it paid, together with penalties thereon, and a declaration that the debt is non-dischargeable. *See,* 11 U.S.C. §§ 523(a)(2) (fraud); (a)(7) (fine, penalty or forfeiture). Although properly served, the debtor did not respond within the time required and the plaintiff filed a motion for default judgment. Because the complaint contained conflicting allegations as to whether the debtor's representations were false, the court set the motion for a hearing. *See,* Notice of Hearing, dated Nov. 24, 2015. *See also,* Fed R. Civ. P. Rule 55(b)(2)(C) (the court may conduct hearings on motions for default judgment when it needs to establish the truth of any allegation). In doing so, it also raised the issue of whether the department's "investigative determination that concluded the debtor knowingly failed to disclose or falsified material facts ... [was] entitled to any collateral estoppel effect." *Id.* At the hearing, the plaintiff presented no further evidence, but did present arguments and filed a brief. The matter is before the court following that hearing, at which

debtor's recently retained counsel also appeared.

 A default judgment is not a matter of right. *See e.g., J & J Sports Productions, Inc. v. Kotsopoulos,* 2015 WL 5730343 (N.D.Ind.2015); *Sims v. Johnson,* 2011 WL 839671, *2 (N.D.Ind.2011); *Abdul–Wadood v. Wright,* 1995 WL 905228 (N.D.Ind.1995). It is a matter committed to the court's discretion. *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1322 (7th Cir.1983); *Duling v. Markun,* 231 F.2d 833, 836 (7th Cir.1956). A defendant's failure to respond to a complaint against it does not mean that the plaintiff is entitled to the relief it seeks. *Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975). Instead, the default is nothing more than an admission of the well pleaded factual allegations contained in the complaint. *Id.* Those allegations must still state a legitimate claim for relief before the plaintiff is entitled to the entry of judgment in its favor. *Id. See also, Black v. Lane,* 22 F.3d 1395, 1399 (7th Cir.1994); *United States v. Di Mucci,* 879 F.2d 1488, 1497 (7th Cir.1989); *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir.1983). Consequently, in passing upon a motion for default judgment, the court has a duty to examine the plaintiff's allegations and satisfy itself that the entry of judgment based upon them would be appropriate. *See, Weft, Inc. v. G.C. Inv. Associates,* 630 F.Supp. 1138, 1141 (E.D.N.C.1986), aff'd sub nom *Weft, Inc. v. Georgaide,* 822 F.2d 56 (4th Cir.1987). *See also, Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980) (affirming trial court's denial of motion for default judgment and sua sponte dismissal due to the complaint's failure to state a claim for relief). That is one of the reasons the court may hold a hearing and receive evidence in connection with motions for the entry of judgment by default. *See,* Fed. R. Civ. P. Rule 55(b)(2). *See also, In re Liu,* 282 B.R. 904, 907–908 (Bankr.C.D.Cal.2002).

Plaintiff claims the defendant falsely represented his employment status and/or income in connection with applying for unemployment benefits during 2010. The claim is based upon a departmental investigation that concluded the debtor "failed to disclose material facts" which would have affected his benefits because he "either had not reported or under reported earnings on Defendant's weekly claims vouchers." *See e.g.* Complaint, ¶ 13. Yet, exhibits accompanying the complaint contradict the allegation that he falsely represented his employment status. *See, Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452–53 (7th Cir.1998) (under Rule 10(c), documents attached to the complaint are incorporated into the pleadings); *Schnell v. City of Chicago,* 407 F.2d 1084, 1085 (7th Cir.1969) (exhibits attached to a complaint are a part thereof for all purposes). Exhibit C to the complaint indicates the debtor told the investigator he had informed the department about his part time employment and was told he could continue to claim benefits. While that statement may not affect the department's ability to recover any overpayments as a matter of non-bankruptcy law, it certainly does affect the department's rights in bankruptcy because it is only the fraudulently obtained benefits that can be declared non-dischargeable. Any liability for benefits improperly paid for reasons other than fraudulent misrepresentation is dischargeable.

 The investigator apparently did not believe what the debtor said about contacting the department and, instead, "concluded that you knowingly failed to disclose, or falsified material facts" justifying the imposition of penalties. *See e.g.,* Complaint,

Exhibit C, Conclusion of Case. That is the reason the court raised the issue of collateral estoppel in the notice of hearing. If the investigator's determination is entitled to collateral estoppel effect, neither the debtor nor the court can question the finding of a knowing failure disclose or falsification. If, on the other hand, collateral estoppel does not apply, this court can make its own determination.

 In bankruptcy proceedings, state law usually determines whether a prior decision operates as an estoppel. *Spearman v. Delco Remy Division of GMC,* 717 F.Supp. 1351, 1357 n. 4 (S.D.Ind.1989); *Matter of Staggs,* 178 B.R. 767, 773 (Bankr.N.D.Ind.1994). In general, Indiana has a two-step process for determining the appropriateness of collateral estoppel: whether the party in the prior action had a full and fair opportunity to litigate the issue and whether it would otherwise be unfair to apply collateral estoppel given the facts of the particular case. *Tofany v. N.B.S. Imaging Systems, Inc.,* 616 N.E.2d 1034, 1038 (Ind.1993); *Fox v. Nichter Construction Co. Inc.,* 978 N.E.2d 1171, 1181 (Ind.Ct.App.2012). No decision the court is aware of has held that the unappealed decision of an initial administrative investigation operates as an estoppel. The Indiana Supreme Court has, however, concluded that other decisions of administrative agencies may or. may not operate as an estoppel. *See, McClanahan v. Remington Freight Lines, Inc.,* 517 N.E.2d 390 (1988) (unappealed decision of hearing officer reversing initial denial of unemployment benefits did not operate as collateral estoppel). In doing so, it also articulated the test for determining whether an administrative determination operates as collateral estoppel in subsequent litigation. *Id.* at 394. *See also, Spearman,* 717 F.Supp. at 1357. It considers:

1. whether the issues sought to be estopped were within the statutory jurisdiction of the agency;

2. whether the agency was acting in a judicial capacity;

3. whether both parties had a fair opportunity to litigate the issues;

4. whether the decision of the administrative tribunal could be appealed to a judicial tribunal.

Applying these considerations leads to the conclusion that the investigator's decision, that the debtor knowingly failed to disclose or falsified material facts, does not operate as collateral estoppel in this case and does not conclusively establish those facts for the purpose of determining dischargeability under § 523(a)(2).

While the issue sought to be estopped—whether the debtor received benefits he was not entitled to and, if so, why—was within the department's jurisdiction, it was not acting in a judicial capacity. It was acting in an investigatory capacity. Instead of making a decision based upon facts and arguments presented to it, the decision maker was responsible not only for deciding the issue but also gathering the facts upon which the decision would be made. It was an inquisitorial process, in which the investigator was also the judge and the prosecutor; not an adversarial one. *United States v. Morton Salt,* 338 U.S. 632, 642–43, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950) (administrative agency has a power of investigation, not derived from its judicial function, analogous to a Grand Jury).

There is some reason to question whether the debtor had a fair opportunity to litigate the issue. Although he was interviewed during the investigation, the court does not know what he was told about the purpose of that interview or the issues to be explored. We also do not know if he had the opportunity to call witnesses on

his own behalf or to cross-examine the sources of the investigator's information. Furthermore, it seems the debtor saw the interview as a coercive experience and indicates he was told he had to agree to the assessments or he would be criminally prosecuted and sent to jail. Unfortunately, there is no record or transcript of that interview that would permit the court to determine what was said or done. Such an informal proceeding differs substantially from a traditional courtroom proceeding and that weighs heavily against allowing its results to be used as an estoppel. *McClanahan*, 517 N.E.2d at 385. *See also, Spearman*, 717 F.Supp. at 1359–60 (higher level, more formal administrative decision operated as an estoppel).[1]

The debtor had the opportunity to appeal the investigator's decision,[2] but the decision itself is contradictory on that point. After informing the debtor that the decision would become final unless appealed, *see e.g.*, Complaint, Exhibit C, p.2, it proceeds to offer advice concerning the right to appeal. Insofar as the claimant is concerned, it states:

> If the legal result of your case states that your weekly benefits have been reduced or suspended, or if your maximum benefit amount has been reduced, you have the right to appeal this decision. *See e.g.*, Complaint, Exhibit C, p.3.

The "legal result of case" in the decision contains no such language. Nothing is ever said about reducing or suspending benefits. Instead, it reads:

> You may have received benefits to which you are not entitled and which you may

now be liable to repay to the Department. Indiana law states that when you knowingly fail to properly disclose employment earnings, a 25%, 50%, or 100% penalty is assessed as indicated on the Notice(s) of Potential Overpayment, Form(s) BCO001. All wages earned during the weeks of overpayment under this statute are cancelled for future use in establishing unemployment entitlement which may cause a subsequent claim to [sic] recomputed or may cancel the claim. This may create an additional overpayment. *See e.g.*, Complaint, Exhibit C, p.1.

The notice of overpayment to which the decision refers says it cannot be appealed. *See e.g.*, Complaint, Exhibit E, final page. So, did the debtor have the right to appeal or not? Based upon what the department told him, you might think not. Moreover, the language of the decision is hardly definitive. The debtor is told he "may have received benefits" he was not entitled to, which he "may now be liable to repay." Did he or didn't he have to do so? The conditional language of the decision would suggest that it is the basis for further inquiry or investigation, not a final determination.

■ The debtor did not appeal the investigator's determination, so it apparently became final by default. But, in Indiana, default judgments, entered after a defendant's failure to respond to a complaint do not operate as collateral estoppel in future litigation. *Porter's South Shore Cleaners v. State*, 512 N.E.2d 895, 897–98 (Ind.Tax 1987); *Foursquare Tabernacle Church of*

---

**1.** *Spearman* observed that the Indiana Supreme Court's decision in *McClanahan* "almost implied that collateral estoppel could not be invoked from decisions of any branch of the Indiana Employment Security Division because of their informality." *Spearman*, 717 F.Supp. at 1359. Although *Spearman* did apply collateral estoppel to the case before it, it

was dealing with a decision made at a higher level than the decision in *McClanahan*. Here, by contrast, the court is dealing with an administrative decision made at a lower level than that considered in *McClanahan*.

**2.** That first appeal would not be to a judicial tribunal.

God in Christ v. State Board of Tax Commissioners, 550 N.E.2d 850, 852–53 (Ind. Tax 1990); *In re Laughlin,* 2014 WL 789127 *5 (D.N.D.Ind.2014); *In re Holland,* 155 B.R. 745, 748–49 (Bankr.S.D.Ind. 1992). If a court's default judgment, entered after a judge's review of the sufficiency of the allegations in a complaint, is not treated as an estoppel, there seems to be no reason why an administrative investigator's determination, which is not reviewed by anyone, should be given greater effect.

In many respects, what occurred here was little different from a plaintiff's prelitigation investigation; it produced a complaint, alleging claims, which was filed, but never acted upon and judgment on those claims was never sought nor taken. Alternatively, it could be compared to a prosecuting attorney's investigation that returned an indictment. Yet, a criminal defendant is not automatically convicted because it does not ask for a trial after an indictment is handed down. While the department's decision and procedures may be sufficient for its own internal purposes, they do not satisfy the demands of collateral estoppel.

The court concludes that the plaintiff's determination of eligibility does not operate as collateral estoppel preventing the defendant from contesting the claim that he knowingly failed to disclose or falsified material facts, or prevent the court from examining that claim. Since the allegations in the complaint and the exhibits that accompany it are in conflict on that point, *see, Dundee Cement Co.,* 722 F.2d at 1323 (7th Cir.1983), and the court has no further evidence on the issue, plaintiff's motion for default judgment is DENIED.

SO ORDERED.